18CR10140

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
|---|---|---|
| v. | : | DATE FILED: _____ |
| MICHAEL MATEJA<br>SAMUEL PULEO<br>MATTHEW MORGAN | :<br>:<br>: | VIOLATIONS:<br>18 U.S.C. § 1343 (wire fraud - 1 count)<br>18 U.S.C. § 1505 (obstruction of justice - 1 count)<br>18 U.S.C. § 2 (aiding and abetting)<br>Notice of forfeiture |

## INFORMATION

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this information:

1. Defendants MICHAEL MATEJA and SAMUEL PULEO held themselves out as co-owners of Coastal Energy, LLC ("Coastal"), a company that brokered energy contracts between commercial businesses and energy suppliers.

2. Defendant MATTHEW MORGAN was a Coastal employee who worked for defendants MICHAEL MATEJA and SAMUEL PULEO.

### THE SCHEME

3. From in or about June 2011 to in or about February 2013, defendants

**MICHAEL MATEJA**
**SAMUEL PULEO, and**
**MATTHEW MORGAN**

devised and intended to devise a scheme to defraud businesses seeking to pay lower energy prices and to obtain money by means of false and fraudulent pretenses, representations and promises.

## MANNER AND MEANS

It was part of the scheme that:

4. Defendants MICHAEL MATEJA and SAMUEL PULEO solicited businesses in Eastern Pennsylvania and New Jersey to hire Coastal to negotiate lower energy prices from energy providers.

5. As part of this process, defendants MICHAEL MATEJA and SAMUEL PULEO had Coastal clients sign limited power of attorney agreements ("Coastal POA") allowing Coastal's employees to negotiate directly with energy providers on the client's behalf. Each Coastal POA signed by a Coastal client stated the "Contract Type" or the price per kilowatt hour that Coastal would negotiate.

6. The Coastal POA signed by Coastal clients stated that Coastal would negotiate a "Fixed All-Inclusive" rate for the client.

   a. A "Fixed All-Inclusive" contract provides the customer with one rate for each kilowatt hour used. This single rate includes charges for transmission, capacity, and energy, the three common charges that make up a consumer's energy bill.

   b. Alternatively, an "Energy Only" contract provides the customer with a rate for each kilowatt hour, but this rate does not include the additional charges for transmission and capacity.

7. As an energy broker Coastal could not negotiate the transmission and capacity charges. Unbeknownst to their clients, defendants MICHAEL MATEJA and SAMUEL PULEO decided to alter the signed Coastal POA and change the terms of the contract from "Fixed All-Inclusive" contracts to "Energy Only."

2

8. In some instances defendants MICHAEL MATEJA and SAMUEL PULEO had defendant MATTHEW MORGAN use computer programs akin to Photoshop to alter these Coastal POA.

9. After defendants MICHAEL MATEJA, SAMUEL PULEO, and MATTHEW MORGAN altered these contracts, they sent the altered contracts on to energy suppliers via electronic mail. These energy suppliers, located in Illinois, New Jersey, and other places, assumed that the Coastal POA were valid and entered into energy supply agreements with Coastal's clients. In some cases, these energy suppliers also purchased energy and spent other monies based on the expectation that they would be fulfilling their commitments to supply energy on these contracts.

10. As a result of the actions of defendants MICHAEL MATEJA, SAMUEL PULEO, and MATTHEW MORGAN, Coastal earned commissions that it was not entitled to and its clients ended up paying much higher rates for energy than they contracted for. The total price per kilowatt hour that Coastal's clients were contractually obligated to pay as a result of the fraudulent Coastal POA was higher than the "Fixed All-Inclusive" rates they agreed to pay.

11. For instance, New Jersey company R.B., signed a Coastal POA agreeing that Coastal could negotiate a "Fixed All-Inclusive" contract on its behalf where it agreed to pay a total price of $0.07069 per kilowatt hour. After R.B. executed the Coastal POA, defendant MATTHEW MORGAN altered the document to indicate that R.B. agreed to enter into a "Fixed Energy" contract with a price of $0.05590 per kilowatt hour for energy only. On R.B.'s behalf Coastal then negotiated a contract with an Illinois energy supplier whereby R.B. agreed to pay $0.05590 per kilowatt hour for energy only. As a result of this undisclosed alteration, R.B. ended

3

up paying a much higher total rate per kilowatt hour than the $0.07069 it agreed to pay.

12. In or about September 2012, defendants MICHAEL MATEJA and SAMUEL PULEO became aware that the FBI was investigating Coastal's fraudulent conduct. In an attempt to conceal these crimes, defendant MICHAEL MATEJA agreed to pay defendant MATTHEW MORGAN to delete documents from Coastal's computers.

13. On or about May 24, 2012, in the Eastern District of Pennsylvania, and elsewhere, defendants

           **MICHAEL MATEJA**
           **SAMUEL PULEO, and**
           **MATTHEW MORGAN**

for the purpose of executing the scheme described above, and aiding and abetting the execution of the scheme, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce, an email from Coastal's office in the Eastern District of Pennsylvania to an energy supplier located in Illinois, attaching the altered Coastal POA for Coastal client R.B.

All in violation of Title 18, United States Code, Sections 1343, 1349, and 2.

## COUNT TWO

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. Paragraphs One and Two and Four through Twelve of Count One of this information are incorporated here.

2. In or about August 2012, in the Eastern District of Pennsylvania, defendants

**MICHAEL MATEJA, and**
**MATTHEW MORGAN**

corruptly influenced, obstructed, and impeded, and endeavored to influence, obstruct, and impede, the due and proper administration of the law, under a pending proceeding before a department or agency of the United States, that is, the ongoing federal investigation by the Federal Bureau of Investigation, by attempting to delete evidence, that is documents located on Coastal's computers, in order to prevent the Federal Bureau of Investigation from acquiring this evidence.

In violation of Title 18, United States Code, Sections 1505 and 2.

5

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Sections 1343 and, set forth in this Information, defendants

    **MICHAEL MATEJA**
    **SAMUEL PULEO, and**
    **MATTHEW MORGAN**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such offenses.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

6

All pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Sections 981(a)(1)(C).

*[signature]*
ZANE DAVID MEMEGER
United States Attorney